S.W., Appellant–Petitioner, by
Pam WESOLOWSKI, As
Next Friend,

v.

Behadil KURTIC, Appellee–Respondent.

No. 71A03–1012–PO–655.

Court of Appeals of Indiana.

May 24, 2011.

Paul E. Singleton, Family Justice Center of St. Joseph County, South Bend, IN, Attorney for Appellant.

## OPINION

CRONE, Judge.

### Case Summary

This case involves a developmentally disabled adult, S.W., whose sister sought a protective order on her behalf against a man who had repeatedly banged on S.W.'s apartment door and tried to enter. The trial court issued a two-year protective order forbidding the man from having contact with S.W. Nonetheless, the man twice returned to S.W.'s apartment within the five weeks that followed, and S.W. filed a petition for an order to show cause why the man should not be held in contempt for violating the protective order. She also sought attorney's fees. The trial court denied her petition without a hearing. Thereafter, she filed a motion to correct error, the denial of which she now appeals. She asserts that the trial court denied her due process by failing to conduct a hearing on her contempt petition and that she should be exempt from paying the $250 appellate filing fee. We agree and there-

fore reverse and remand for proceedings consistent with this decision.

## Facts and Procedural History

S.W. is a developmentally disabled adult who shares an apartment with another developmentally disabled woman as part of a semi-independent living program. The program is provided by Partners in Opportunities, Inc. ("PIO"), and PIO staff members assist S.W. and her roommate in their daily activities.

On several occasions in September 2010, PIO staff persons reported incidents involving a man, Behadil Kurtic, who came to S.W.'s apartment late at night and pounded on the door. On at least one occasion, he turned the doorknob, and yelled, "I know you are in there." Appellant's App. at 10. South Bend Police became involved on more than one occasion.

On September 27, 2010, Pam Wesolowski, acting as next friend for her sister S.W., sought a protective order against Kurtic. On September 28, 2010, the trial court issued a two-year ex parte protective order prohibiting Kurtic from stalking, harassing, annoying, contacting, and visiting S.W.'s residence. Kurtic was served with the order on September 29, 2010. However, he returned to S.W.'s apartment on November 3 and November 5, 2010, and pounded on the door.

On November 17, 2010, acting for S.W., Pam filed a petition for Kurtic to appear for a hearing to show cause why he should not be held in contempt for violating the protective order. She supported her petition with affidavits and also requested attorney's fees. That same day, the trial court denied her petition without a hearing, stating that protective order violations were criminal matters and that she should contact the prosecutor's office. Id. at 2. On December 7, 2010, S.W. filed a motion to correct error. The trial court denied her motion that same day, stating "that

the supporting Affidavit references a criminal arrest for violation of the Court's Protective Order." Id. at 3. On December 17, 2010, S.W. filed a motion to reconsider, on which the trial court reserved ruling. S.W. now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### I.  Hearing on Contempt Petition

█ S.W. first contends that the trial court erred in denying her contempt petition without a hearing. Ordinarily, we review the trial court's ruling on a contempt petition for an abuse of discretion. Mitchell v. Mitchell, 871 N.E.2d 390, 394 (Ind.Ct.App.2007). As such, we affirm unless, after reviewing the record, we conclude that the trial court's decision is against the logic and circumstances before it, and we have a firm and definite belief that a mistake has been made by the trial court. Id. However, in this case, Kurtic has not filed an appellee's brief. As such, we need not undertake the burden of developing arguments on his behalf. In re Paternity of C.N.S., 901 N.E.2d 1102, 1105 (Ind.Ct.App.2009). Rather, we may reverse if S.W. presents a case of prima facie error, which means error "at first sight, on first appearance, or on the face of it." Id.

█ "Contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." Henderson v. Henderson, 919 N.E.2d 1207, 1210 (Ind.Ct.App.2010) (citation and internal quotation marks omitted). Contempt falls into two categories—direct and indirect. Id. Whereas direct contempt involves actions occurring near the court and of which the court has personal knowledge, indirect contempt involves actions outside the court's presence and personal knowledge. Id. A person who willfully disobeys a lawfully issued court order is guilty of indirect contempt. Ind.Code § 34–47–3–1.

A party who has been injured or damaged by the failure of another person to conform to a court order may seek a finding of contempt. *Flash v. Holtsclaw*, 789 N.E.2d 955, 958 (Ind.Ct.App.2003), *trans. denied.* "A court's inherent civil contempt powers are both coercive and remedial in nature." *Id.* at 959. In a civil contempt proceeding, the primary objective is not to punish, but rather, to coerce action or to compensate the aggrieved party. *Id.* In such cases, imprisonment may be imposed in order to coerce compliance with the court order. *Id.* We have held that a civil contempt order is appropriate when a person violates a protective order. *See id.* (civil contempt order held proper where ex-boyfriend violated protective order forbidding the dissemination of false information regarding ex-girlfriend).

■ Here, Kurtic was the subject of a two-year protective order forbidding him from contacting S.W. or going to her residence. The record shows that despite being served with notice of the protective order against him, he went to her apartment on at least two occasions in violation of the order. Thus, the underlying factual basis supporting his willful violation of the protective order is apparent in the record before us. However, the trial court denied S.W.'s request for a hearing to determine whether Kurtic should be held in indirect civil contempt.

She now claims that the trial court's denial of her request for a hearing violated her due process rights as guaranteed by the United States and Indiana Constitutions. Interestingly, the indirect civil contempt statute addresses due process issues, but only in terms of preserving the due process rights of the person *accused* of contempt. Indiana Code Section 34–47–3–5 lists an array of notice requirements, namely, that before the accused be required to answer the charge, he must be served with a rule of the court whose order he is accused of violating, and that the rule to show cause must specifically state the underlying facts of his alleged violation, including the time, place, and nature of circumstances, and specify the time and place where he must appear to answer the contempt allegation. Furthermore, the facts underlying the contempt accusation must be verified by oath. *Id.*[1] Absent from the statute is any express language indicating that the *accuser* is entitled to a hearing. Instead, the statute merely states that a rule to show cause "may not issue until the facts alleged to constitute the contempt have been: (1) brought to the knowledge of the court by an information; and (2) duly verified by the oath of affirmation of some officers of the court or other responsible person." Ind.Code § 34–47–3–5(d).

Here, S.W.'s petition for contempt was factually specific and was accompanied by supporting affidavits. The trial court never indicated that her petition was statutorily deficient. In its December 7, 2010 order denying S.W.'s motion to correct error, the trial court "observ[ed] that the supporting Affidavit references a criminal arrest for the alleged violation of the Court's Protective Order, [and] declines [S.W.'s] invitation for hearing on contempt." Appellant's App. at 3. The record does not indicate the specifics of any criminal proceedings against Kurtic or whether they are still pending, and we do not believe that the decision to grant or deny a civil contempt petition should be based on

---

1. *See also* Ind.Code § 34–26–1–14 (addressing notice and service of rule to show cause upon the accused) and Ind.Code § 34–26–1–15 (addressing attachment for contempt, arrest of party charged, and indemnification of plaintiff).

such collateral matters.[2] Instead, the petition should be evaluated independently, without reference to other proceedings that may or may not otherwise protect the person for whose safety the original protective order was issued. *See* Ind. Const. art. 1, § 12 ("All courts shall be open; and every person, for injury done to him ... shall have remedy by due course of law. Justice shall be administered freely ... completely, and without denial; speedily, and without delay.") Thus, we conclude that S.W. has presented a case of prima facie error, and we reverse and remand for a hearing on her civil contempt petition.

## II. Appellate Filing Fee

■ S.W. also asserts that she should be statutorily excused from paying the $250 appellate filing fee required by Indiana Appellate Rule 9(E).[3] Indiana Code Section 34–26–5–16(1) states that filing fees may not be charged for a proceeding seeking relief or enforcement of a civil protection order. This rule is based on furthering the prevention goal espoused in the Indiana Civil Protection Order Act. Ind.Code § 34–26–5–1. Because S.W.'s appeal is based on the trial court's refusal to enforce the protective order against Kurtic, we agree and order that she be reimbursed her $250 filing fee.

Reversed and remanded.

NAJAM, J., and ROBB, C.J., concur.

---

2. S.W. cites Indiana Code Section 34–26–5–6, which states in part, "An order for protection is in addition to, and not instead of, another available civil or criminal proceeding.... A petitioner is not barred from seeking an order [of protection] because of another pending proceeding." The validity of the protective order itself is not at issue in this appeal. We do not find any parallel provision in the contempt statute, but find this statute instructive.

3. Indiana Appellate Rule 9(E) states, in part, that "[n]o filing fee is required in an appeal prosecuted in *forma pauperis*.... A party may proceed on appeal in *forma pauperis* pursuant to Rule 40." S.W. did not cite this as a basis for exemption from her filing fee.